UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JEANNIE I. NICHOLS,

   Plaintiff,

v.           CASE NO. 2:09-cv-00390

MICHAEL J. ASTRUE,
Commissioner of Social Security,

   Defendant.

## M E M O R A N D U M   O P I N I O N

  This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  Both parties have consented in writing to a decision by the United States Magistrate Judge. Neither party has filed a brief in support of their respective positions.

  Plaintiff, Jeannie I. Nichols (hereinafter referred to as "Claimant"), protectively filed an application for DIB on January 6, 2005, alleging disability as of December 17, 1999, due to back, shoulder and neck pain, depression, problems with memory and a hip impairment.[1]  (Tr. at 627-31, 646.)  Claimant's insured status

---

[1]  Claimant filed two previous applications for DIB.  The first, filed on March 7, 2000, was denied at the administrative level, appealed and affirmed by this court.  See Nichols v. Barnhart, United States District Court for the Southern District of West Virginia, Civil Action No. 5:01-cv-00919. The second, filed on June 15, 2003, also was denied at the administrative

expired on December 31, 2005. (Tr. at 655.) The claim was denied initially and upon reconsideration. (Tr. at 589-92, 595-97.) On September 9, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 598.) The hearing was held on November 9, 2006, before the Honorable Valerie A. Bawolek. (Tr. at 1034-55.) The ALJ conducted a supplemental hearing on February 21, 2007. (Tr. at 1056-74.) By decision dated April 26, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 303-20.) Claimant submitted additional evidence to the Appeals Council, and on March 20, 2009, the Appeals Council determined that the evidence did not provide a basis for changing the ALJ's decision. (Tr. at 296-99.) On April 21, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R.

---

level. Claimant did not pursue an appeal.

§ 404.1520 (2007).  If an individual is found "not disabled" at any
step, further inquiry is unnecessary.  Id. § 404.1520(a).  The
first inquiry under the sequence is whether a claimant is currently
engaged in substantial gainful employment.  Id. § 404.1520(b).  If
the claimant is not, the second inquiry is whether claimant suffers
from a severe impairment.  Id. § 404.1520(c).  If a severe
impairment is present, the third inquiry is whether such impairment
meets or equals any of the impairments listed in Appendix 1 to
Subpart P of the Administrative Regulations No. 4.  Id. §
404.1520(d).  If it does, the claimant is found disabled and
awarded benefits.  Id.  If it does not, the fourth inquiry is
whether the claimant's impairments prevent the performance of past
relevant work.  Id. §§ 404.1520(e).  By satisfying inquiry four,
the claimant establishes a prima facie case of disability.  Hall v.
Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts
to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th
Cir. 1983), and leads to the fifth and final inquiry: whether the
claimant is able to perform other forms of substantial gainful
activity, considering claimant's remaining physical and mental
capacities and claimant's age, education and prior work experience.
20 C.F.R. § 404.1520(f) (2007).  The Commissioner must show two
things: (1) that the claimant, considering claimant's age,
education, work experience, skills and physical shortcomings, has
the capacity to perform an alternative job, and (2) that this

3

specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 306.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease of the cervical spine and lumbar spine. (Tr. at 306.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 312.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 313.)  The ALJ found that Claimant could return to her past relevant work as an assistant head cashier. (Tr. at 318.)  Despite making this finding, the ALJ proceeded to the fifth and final step of the sequential analysis and concluded that Claimant could perform jobs such as office helper, bottle packer, sorter and printed circuit board assembler, which exist in significant numbers in the national economy. (Tr. at 319.)  On this basis, benefits were denied. (Tr. at 320.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

4

defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty-eight years old at the time of the first administrative hearing and forty-seven years old on the date her insured status expired.  (Tr. at 1037.)  Claimant graduated from high school and attended one and a half years of college.  (Tr. at 1037.)  In the past, she worked as an assistant head cashier at Kroger.  (Tr. at 1049.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize evidence related to Claimant's physical condition briefly below.

The objective medical evidence of record prior to December 31, 2005, included an MRI of the lumbar spine in May of 2000, showing degenerative disc disease at the L3 and L4 levels with no evidence of herniated nucleus pulposus or spinal stenosis. (Tr. at 735.) X-rays of the lumbar spine on May 26, 2005, showed mild degenerative changes.   (Tr. at 837, 917.)   On May 26, 2005, Serafino S. Maducodoc, Jr., M.D. diagnosed osteoarthritis of the cervical and lumbosacral spine and gave Claimant a fair prognosis.   (Tr. at 832.)

The record includes the opinion of a State agency medical source, who completed a Physical Residual Functional Capacity Assessment on June 21, 2005. He opined that Claimant could perform light work, with occasional postural limitations, and a need to avoid concentrated exposure to extreme cold and vibration. (Tr. at 852-59.)  The opinion was affirmed by a second State agency source on August 17, 2005.  (Tr. at 859.)

The record includes treatment notes dated December 16, 2004, through January 23, 2006, from Mark White, M.D.  On December 16, 2004, Claimant complained of neck pain after sweeping snow off her stairs and putting a piece of firewood on the fire.  She indicated the pain was not very severe, but she wanted to make sure she did

not have a herniated disc. (Tr. at 920.) Dr. White opined that
Claimant may have some muscle spasm down in her low back. Her
lumbar range of motion was fairly normal, as was the neurological
examination. Dr. White recommended home physical therapy
exercises. (Tr. at 920.) On February 25, 2005, Claimant stated
that her back was still hurting, but that it was getting better.
Dr. White noted that a sedentary rate of 6 "argues against any
significant inflammatory problem in the back." (Tr. at 918.)
Claimant reported that her medication for back pain helped her
condition. (Tr. at 918.) Dr. White observed that Claimant was
"quite stable. *** Her low back pain does not seem to be
significant today at least." (Tr. at 919.) On October 3, 2005,
Claimant complained of lateral condyle right arm pain beginning two
weeks before. Dr. White diagnosed tennis elbow. He recommended
heat and rest. (Tr. at 916.) On October 20, 2005, Dr. White saw
Claimant for a six month check up. Dr. White encouraged Claimant
to be physically active. There is no mention of neck or back
problems. (Tr. at 913-15.)

Evidence after Claimant's date last insured showed a
progressive worsening of her condition. On January 9, 2006, Dr.
White noted that Claimant still had right elbow pain and now had
numbness noted at L4th and L5th fingers for at least one month.
(Tr. at 912.) Dr. White administered an injection of Kenalog. Dr.
White told Claimant that the numbness in her fingers could be

7

cervical radiculopathy, and that if the pain got worse over the next few months, he would recommend further investigation. (Tr. at 912.) On January 23, 2006, Dr. White examined Claimant for follow up of her elbow pain. Claimant was "feeling better, no real complaints." (Tr. at 910.) Claimant asked Dr. White to complete a disability form for an insurance company, but he declined. He stated that Claimant had no visible back muscle spasm. Claimant was able to lie down and sit back up on the exam table without apparent significant difficulty. (Tr. at 910-11.) He opined that "[t]he chronic back pain for which she claims to be disabled, in my opinion seems fairly minor and I doubt it really prohibits her from doing most everything she would like to do." (Tr. at 911.)

The record includes treatment notes from Millie Petersen, D.O. dated February 3, 2006, through October 20, 2006. On February 3, 2006, Claimant complained of back, neck and leg pain. Dr. Petersen diagnosed unspecified back pain and ordered a functional capacity evaluation. (Tr. at 941-42.)

A functional capacity evaluation on February 8, 2006, stated that Claimant could perform sedentary to light work. (Tr. at 876.)

On February 21, 2006, Dr. Petersen examined Claimant for neck and back pain, numbness and pain radiating down her left leg. Claimant had decreased range of motion. Dr. Petersen diagnosed back pain unspecified and lumbar spasm, strain, sprain in the lumbar region. (Tr. at 939-40.) On March 24, 2006, Claimant

complained of neck and back pain, worse when standing, and numbness
in the last two digits of the left hand.  Dr. Petersen ordered an
EMG of the left upper extremities.  (Tr. at 936-37.)  On May 19,
2006, Claimant complained of neck, back and leg pain, made worse
with standing, sitting and bending.  Dr. Petersen diagnosed
numbness, 5th digit, left hand (disturbance of skin sensation) and
back pain (backache unspecified), lumbar spasm, strain and sprain
(lumbar region), and lumbar disc disease with nerve involvement
(intervetebral disc disorder with myelopathy, unspecified region).
(Tr. at 933-35.)  On August 22, 2006, Claimant had similar
complaints.  (Tr. at 930-31.)  On September 27, 2006 and October 9,
2006, Claimant continued to have numbness and pain located in the
left arm.  Medication was not effective.  (Tr. at 924-927.)  On
October 20, 2006, Claimant reported no improvement in her elbow
pain despite a previous injection of celestone, which only helped
for two to three days.  The results of Claimant's EMG were pending.
(Tr. at 921-23.)

X-rays of the cervical spine on October 11, 2006, showed disc
space narrowing at C5-6 with moderate arthritic change and
encroachment on the foramina bilaterally.  There was also mild
narrowing of the C6-7 disc space.  (Tr. at 893.)  On October 12,
2006, Joe O. Othman, M.D. conducted a needle EMG of the bilateral
upper extremities and a nerve conduction study of the right upper
extremity, both of which showed significant drop in the ulnar nerve

velocity across the left elbow consistent with mild left ulnar neuropathy across the elbow, otherwise unremarkable.  (Tr. at 902.)

An MRI of the cervical spine on November 2, 2006, showed a large left paracentral/foraminal disc protrusion at C6-7, spondylosis with large overlying disc protrusion at C5-6 and left uncinate spurs at C2-3.  (Tr. at 909.)

On November 20, 2006, John H. Schmidt, M.D. examined Claimant for neck, shoulder and left arm pain with tingling in the thumb. He noted that symptoms presented themselves "in January and progressively got worse, especially in September." (Tr. at 954.) Dr. Schmidt recommended surgery.  (Tr. at 955.)

On November 22, 2006, Dr. Schmidt performed the following procedures:  anterior cervical discectomy C5-C6 and C6-C7, microosteophytectomy anterior and posterior C5-C6 and C6-C7, DePuy Bengal carbon fiber cage placement C5-C6 and C6-C7 and anterior cervical plate DePuy uniplate system fixation/fusion.  (Tr. at 943.)  On December 13, 2006, Claimant saw Dr. Schmidt for follow up, and he noted Claimant was doing well.  Claimant continued to have numbness in her finger, but denied any new weakness, tingling or numbness in the extremities.  (Tr. at 972.)

Analysis

The court finds that the ALJ's decision dated April 26, 2007, is supported by substantial evidence.  In her decision, the ALJ determined that prior to the expiration of Claimant's insured

status on December 31, 2005, Claimant suffered from the severe impairments of degenerative disc disease of the cervical spine and lumbar spine that limited Claimant to light work, reduced by an ability to occasionally climb, balance, stoop, crouch and kneel, a need to avoid extreme cold and vibration, an inability to climb ladders, ropes and scaffolds except for a small step ladder and a need to avoid heights and hazards due to possible pain medication side effects. (Tr. at 306, 313.)

The ALJ concluded that Claimant did not suffer a severe mental impairment. (Tr. at 309-12.) The ALJ's decision is in keeping with the regulations related to the evaluation of mental impairments and is supported by substantial evidence. 20 C.F.R. § 404.1520a (2007). Notably, while Claimant has a history of treatment for depression, she was eventually discharged from treatment by her treating psychiatrist, Ahmed D. Faheem, M.D., after she took herself off medication in July of 2004. (Tr. at 762.) In addition, the State agency medical sources both opined that Claimant's mental impairments were not severe (Tr. at 838-51, 860-73), and a medical expert at a previous hearing testified that Claimant had no mental impairment that would interfere with work (Tr. at 311, 1020).

The ALJ's findings about Claimant's physical impairments and their resulting limitations also are supported by substantial evidence. As the summarized evidence of record indicates,

11

Claimant's physical condition prior to December 31, 2005, was not disabling. While Claimant's condition slowly deteriorated in 2006, leading to surgery in late 2006, the substantial evidence of record supports a finding that Claimant did not meet the requirements for disability before December 31, 2005, and, instead, could return to her previous work as a clerk or perform light and sedentary jobs, including office helper, bottle packer, sorter and printed circuit board assembler. (Tr. at 318-19.)

The court further finds that the ALJ's pain and credibility findings are consistent with the applicable regulation, case law and social security ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. § 404.1529(b) (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication, and she ultimately determined that Claimant was not entirely credible. (Tr. at 313-18.)

Finally, Claimant submitted new evidence to the Appeals Council, which was incorporated into the record, and, as a result, the court must conduct the analysis required by Wilkins v. Secretary, 953 F.2d 93 (4th Cir. 1991). In Wilkins, the Fourth Circuit explained that:

> "Reviewing courts are restricted to the administrative
> record in performing their limited function of

determining whether the Secretary's decision is supported by substantial evidence." *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972); *see* 42 U.S.C.A. § 405(g). [However, where the] Appeals Council specifically incorporated ... [evidence] into the administrative record ..., we must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings.

Id.

The new evidence submitted to the Appeals Council includes treatment notes from Dr. Petersen dated March 24, 2007, July 6, 2007, October 12, 2007, October 30, 2007, and November 14, 2007, and the results of an MRI on June 7, 2007.  (Tr. at 973-89.)

In addition, Claimant submitted evidence from Dr. Schmidt dated January 11, 2008, and January 30, 2008, in which he diagnosed lumbar spondylosis, but did not recommend aggressive treatment. (Tr. at 996-99.)  Instead, he recommended conservative efforts such as warm, moist heat, hot showers, physical therapy and massage.  In addition, he opined that "given her age, education, previous work history and her present cervical and lumbar spine degenerative disc disease, I believe she probably represents permanent disability from the work force."  (Tr. at 994.)

The Appeals Council stated that it considered the evidence offered by Claimant, but found that it did not provide a basis for changing the ALJ's decision.  (Tr. at 296-97.)  Indeed, all of the evidence submitted to the Appeals Council postdates the expiration of Claimant's insured status by one to two years.  As such, even considering this additional evidence, the ALJ's decision is

13

supported by substantial evidence.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is AFFIRMED, and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: April 2, 2010

Mary E. Stanley
United States Magistrate Judge

14